ACCEPTED
06-14-00232-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
6/3/2015 3:22:58 PM
DEBBIE AUTREY
CLERK

In the
Court of Appeals for the
Sixth Judicial District of Texas at Texarkana

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
6/3/2015 3:22:58 PM
DEBBIE AUTREY
Clerk

| | | |
|---|---|---|
| **Christi Beth Perrin,**<br>Appellant | §<br>§<br>§ | |
| v. | §<br>§ | **No. 06-14-00232-CR** |
| **The State of Texas,**<br>Appellee | §<br>§<br>§ | |

Trial Number 004-82924-2014 in the
Collin County Court at Law 4
The Honorable David Rippel, Judge Presiding

───────────────

STATE'S BRIEF

───────────────

**Greg Willis**
Criminal District Attorney
Collin County, Texas

**John R. Rolater, Jr.**
Asst. Criminal District Attorney
Chief of the Appellate Division

*Oral argument is requested if*
*Appellant also requests argument*

**Erik F. Gierczyk**
Asst. Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, TX 75071
(972) 548-3657
FAX (214) 491-4860
State Bar No. 2408233
egierczyk@collincountytx.gov

**Rachel Tran**
Asst. Criminal District Attorney

# Table of Contents

Index of Authorities.................................................................................. ii

Statement Regarding Oral Argument ......................................................1

Statement of the Case ...............................................................................1

Statement of Facts.....................................................................................1

Summary of the State's Arguments.........................................................6

    Argument & Authorities ........................................................................7

    I. Standard of Review ............................................................................7

**Issue One** THE TRIAL COURT PROPERLY OVERRULED
APPELLANT'S MOTION TO SUPPRESS **...............................................7**

    Appellant claims the trial court erred in denying her motion
    to suppress. The trial court properly overruled the motion to
    suppress because the officer had reasonable suspicion to
    detain Appellant.

    II. Argument .........................................................................................10

Prayer .......................................................................................................15

Certificate of Service ...............................................................................16

Certificate of Compliance ........................................................................16

# Index of Authorities

**Statutes, Codes, and Rules**

Tex. Penal Code § 49.04 ....................................................................... 1

Tex. Transp. Code § 545.418 ....................................................... 10, 14

Tex. Transp. Code § 724.015 ................................................................ 4

**Cases**

*Davis v. State,*
  947 S.W.2d 240 (Tex. Crim. App. 1997) ............................................. 9

*Derichsweiler v. State*
  348 S.W. 3d 906 (Tex. Crim. App. 2011) ......................................... 13

*Ford v. State,*
  158 S.W.3d 488 (Tex. Crim. App. 2005) ............................................ 8

*Garcia v. State,*
  827 S.W.2d 937 (Tex. Crim. App. 1992) ............................................ 9

*Goudeau v. State,*
  209 S.W. 3d 713(Tex. App.—Houston 14th Dist. 2006, no pet. ....... 11

*Graham v. State,*
  893 S.W.2d 4 (Tex. App. – Dallas 1994, no pet.) ............................... 8

*Guzman v. State,*
  955 S.W.2d 85 (Tex. Crim. App. 1997) .......................................... 7, 8

*Jones v. State,*
  833 S.W.2d 118 n. 15 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S.
  921 (1993) ........................................................................................... 8

*Romero v. State,*
  800 S.W.2d 539 (Tex. Crim. App. 1990) ............................................. 7

*State v. Kerwick,*
  393 S.W.3d 270 (Tex. Crim. App. 2013) ......................................... 12

*Strickland v. State,*
  923 S.W. 2d 617 (Tex. App.—Houston [1st Dist.] 1995, no pet.) ..... 11

*Terry v. Ohio,*
  392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)............ 8, 9, 11

*Thomas v. State,*
  336 S.W. 3d 703
  (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ....................... 10, 11

*Wade v. State,*
  422 S.W. 3d 661, 668 (Tex. Crim. App. 2013) ................................. 8, 9

*Whren v. United States,*
  517 U.S. 806, 812-13 (1996) ............................................................. 9

*Woods v. State,*
  956 S.W.2d 33 (Tex. Crim. App. 1997) ............................................. 8

## Statement Regarding Oral Argument

The State does not believe oral argument will assist the Court in resolving the issues in this case. However, if oral argument is granted to Appellant, the State requests the opportunity to respond.

## Statement of the Case

Charge............................................................ Tex. Penal Code § 49.04
CR 9

Plea ................................................................................Not Guilty
2 RR 107

Verdict (Jury).............................................................................Guilty
3 RR 104

Punishment (Jury)...............................................6 days' confinement
3 RR 154

## Statement of Facts

Allen Police Officer Antony Brown was patrolling a residential neighborhood late one evening in September of 2012 when he noticed something out of the ordinary—a black sedan parked in the 400 block of Twin Creeks Drive with its driver's side door open, facing traffic, and no one inside the car or within its vicinity. 2 RR 125. He first saw the car at approximately 12:30 a.m., when it was parked in an inlet

designed for resident parking slightly off the roadway. 2 RR 125. Based on his knowledge of that area and the late hour, Officer Brown suspected the car may have been broken into, or that some other cause for concern accounted for the unusual circumstances, and decided to investigate further. 2 RR 125. A computer check of the car's license plate showed it was not registered to an address in Allen. 2 RR 127-28. As Officer Brown turned his patrol car around to stop in front of the suspicious car, a woman appeared and walked alongside other vehicles parked on the side of the road. 2 RR 127. She was later identified by her driver's license as Christi Beth Perrin, the Appellant in this case. 2 RR 129. Officer Brown parked his patrol car approximately 40 feet in front of the suspicious car and watched Appellant enter the car and begin to drive towards him. 2 RR 127. As Appellant neared Officer Brown's parked patrol car, he stepped out of his car and stopped her. 2 RR 127.

Upon initial contact, Officer Brown immediately noticed Appellant was wearing a polo shirt on backwards, so that the collar was under her chin and the v-shaped button-opening was on her back. 2 RR 128. Officer Brown, who was in training to become a drug

recognition expert (DRE) at the time, also noticed Appellant's eyes were abnormally dilated. 2 RR 129. When asked what she was doing in the neighborhood, Appellant stated that she was trying to visit a friend who lived in Colleyville, a city over 35 miles away from the location of the stop. 2 RR 130. Appellant denied having consumed alcohol, but admitted she had taken four prescription drugs earlier in the day: Valium, Depakote, Adderall and Trazadone. 2 RR 131, 142. Valium, Depakote, and Trazadone are all central nervous system (CNS) depressants, while Adderall is a CNS stimulant. 2 RR 184. Based on what he had observed of Appellant, Officer Brown suspected her of possibly driving while intoxicated (DWI) and decided to administer the standardized field sobriety tests (SFSTs). 2 RR 131.

After determining Appellant was a good candidate for the SFSTs, Officer Brown administered first test, the horizontal gaze nystagmus (HGN) test. 2 RR 134-35. Appellant showed no clues on this test. 2 RR 134-35. Appellant then performed the two divided-attention tests, the walk-and-turn (WAT) and one-legged-stand (OLS) test. 2 RR 137-39. Appellant showed five out of eight clues of intoxication on the WAT and three out of four clues of intoxication on

the OLS. 2 RR 138-39. According to the decision point on each test, Appellant failed both the WAT and OLS. 2 RR 138-42. Based on everything he observed, Officer Brown concluded that the Appellant lacked the normal use of her mental and physical faculties due to the ingestion of CNS depressants and stimulants, and he arrested her for DWI. 2 RR 143.

At the Allen city jail, Officer Thompson read the DIC-24 warnings[1] to Appellant and requested that she provide a blood sample to test for the presence of drugs. 2 RR 145. Appellant consented and Officer Brown then transported her to a hospital for a blood draw. 2 RR 146. Following the blood draw, Officer Matthew Johnson, a certified DRE, conducted a drug recognition exam of Appellant. 2 RR 180. Officer Johnson concluded that Appellant lacked the normal use of her mental and physical faculties due to the introduction of CNS stimulants and depressants into her body. 2 RR 192.

At trial, the blood-draw results were admitted into evidence and showed that Appellant's blood contained: 0.11 milligrams of

---

[1] These warnings set out the penalties associated with refusing to provide a blood or breath sample. *See* Tex. Transp. Code § 724.015.

Amphetamine per liter, 0.10 milligrams of Diazepam per liter, 0.28 milligrams of Nordiazepam per liter, and an unquantified level of Valproic Acid. 3 RR 16, 34, 43; SX 4. Diazepam, Nordiazepam, and Valproic Acid are all CNS depressants, whereas Amphetamine is a stimulant. 3 RR 45. Forensic scientist Eduardo Padilla of the DPS Austin Crime Laboratory testified that the level of Nordiazepam in Appellant's blood, a metabolite of Diazepam (commonly known as Valium), exceeded therapeutic levels. 3 RR 44. He also testified that while each CNS depressant detected in Appellant's blood could have an impairing effect on its own, a greater impairing effect is possible when taken in combination. 2 RR 45. Videos of the traffic stop and interactions at the police station were admitted into evidence and viewed by the jury. 2 RR 193-94; SX 1.

<u>**Summary of the State's Arguments**</u>

*State's Reply to Issue One:*

**THE TRIAL COURT PROPERLY OVERRULED APPELLANT'S MOTION TO SUPPRESS.**

Appellant claims the trial court erred in denying her motion to suppress. The trial court properly overruled the motion to suppress because the officer had reasonable suspicion to detain Appellant.

Argument & Authorities

## Issue One

**THE TRIAL COURT PROPERLY OVERRULED APPELLANT'S MOTION TO SUPPRESS.**

Appellant claims the trial court erred in denying her motion to suppress. The trial court properly overruled the motion to suppress because the officer had reasonable suspicion to detain Appellant.

## I. Standard of Review

In a suppression hearing, the trial court judges the witnesses' credibility and the weight to be given to testimony. *Romero v. State*, 800 S.W.2d 539,543 (Tex. Crim. App. 1990). In reviewing a trial court's decision on a motion to suppress, an appellate court must grant almost total deference to a trial court's determination of the historical facts that the record supports, especially when the court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The same amount of deference must be afforded to the trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.*

However, an appellate court may review de novo "mixed questions of law and fact" not falling within this category. *Id.*

The trial court's ruling must be upheld if it is right for any reason. *Jones v. State*, 833 S.W.2d 118,125 n. 15 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993). In fact, the trial court's ruling should be upheld if it can be upheld on any valid theory regardless of whether the State argued the theory in the trial court or on appeal. *Graham v. State*, 893 S.W.2d 4, 7 (Tex. App.—Dallas 1994, no pet.).

To conduct an investigative detention, a police officer must have a reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). An officer has reasonable suspicion for a detention if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Wade v. State*, 422 S.W. 3d 661, 668 (Tex. Crim. App. 2013); *Ford v. State*, 158 S.W.3d 488,492 (Tex. Crim. App. 2005).

The reasonableness of a temporary detention is determined from the totality of the circumstances. *Wade,* 422 S.W. 3d at 668.

An investigative detention is reasonable if the officer's action was justified at its inception and was reasonably related in scope to the circumstances that justified the interference in the first place. *Terry* 392 U.S. at 19-20; *Davis v. State,* 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). The reasonableness of a traffic stop is evaluated based solely on an objective standard; thus, an officer's subjective intent plays no role in the determination of whether a traffic stop was reasonable. *Whren v. United States,* 517 U.S. 806, 812-13 (1996); *see also Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (the "officer's subjective intent is relevant only to a credibility determination of his stated reasons for stopping or arresting an individual."). Consequently, the police may validly stop a vehicle for a traffic violation so long as the stop would be objectively reasonable, regardless of whether the stop is a mere pretext to investigate unrelated criminal conduct. *Garcia,* 827 S.W.2d at 944.

## II. Argument

In *Thomas v. State*, 336 S.W. 3d 703, 709 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd), a police officer, who was outside of his jurisdiction, saw a car driving unsafely, and observed a passenger open one of the car's doors so that it was facing traffic while the car was still partially in the street. *Thomas* 336 S.W. 3d at 706, 708-9. The officer stopped the car, questioned the driver Thomas, and Thomas was ultimately arrested for driving while intoxicated. *Id.* at 706-7. Thomas filed a motion to suppress the stop and arrest, arguing, in part, that the stop was impermissible under *Terry* because the investigating officer was outside his jurisdiction and Appellant had not been the one to open the passenger door. *Thomas* at 707.

On appeal, Thomas again argued that the detention was impermissible under *Terry*. *Thomas* at 708. The First Court of Appeals held that an officer's visual observation of a car's door being open, while facing traffic, provided an officer with reasonable suspicion of a violation of section 545.418 of the Texas Transportation Code and provided sufficient justification for an

investigatory detention under *Terry*. *Thomas* at 709. Even though the officer had not seen Thomas open the car door, the court noted that, "There is no requirement that justification for the *Terry* stop be caused by the driver of the vehicle or even the person ultimately charged with a crime." *Thomas* at 709; *See Strickland v. State*, 923 S.W. 2d 617, 620 (Tex. App.—Houston [1st Dist.] 1995, no pet.). Lastly, under the second prong of *Terry*, the court held that once the officer approached Thomas during the stop, smelled alcohol, and suspected he was drunk—the officer's investigative detention expanded to include driving while intoxicated. *Id.* at 710. *Terry*, 392 U.S. at 20; *see Goudeau v. State*, 209 S.W. 3d 713, 719 (Tex. App.—Houston 14th Dist. 2006, no pet.) ("During an investigation of a traffic violation, if an officer develops [a] reasonable suspicion that another violation has occurred, the scope of the initial investigation expands to include the new offense.").

In the instant case, Appellant argues that she was illegally detained because the officer stopped her without reasonable suspicion. Appellant overlooks the highly suspicious nature of the circumstances that led up to the stop, which provided Officer Brown

11

sufficient justification to conduct an investigative detention. It is undisputed that Officer Brown, during his routine patrol, happened upon an open and unattended vehicle late at night with no one in the vicinity. As a veteran patrol officer familiar with the area, Officer Brown knew the circumstances were out of the ordinary and he immediately suspected the car may have been burglarized or that some other criminal activity was afoot. As he prepared to stop and continue his investigation, Officer Brown saw Appellant suddenly appear and attempt to drive away in the suspicious car. At that point in his investigation, Officer Brown could reasonably have reasonably inferred that he was witnessing a possible burglary of a motor vehicle become an unauthorized use of a motor vehicle. *See State v. Kerwick*, 393 S.W.3d 270, 276 (Tex. Crim. App. 2013) (officer may briefly detain persons to establish their identities and ensure they have not just committed offenses). Just as with other potential crimes involving automobiles, the mobile nature of the car and its occupants demands that an investigation of suspected criminal activity be carried out in a time-sensitive manner. As the Court of Criminal Appeals stated in *Derichsweiler v. State*:

Particularly with respect to information suggesting that a crime is *about* to occur, the requirement that there be "some indication that the unusual activity is related to crime" does not necessarily mean that the information must lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent. It is enough to satisfy the lesser standard of reasonable suspicion the information is sufficiently detailed and reliable – *i.e.*, it supports more than an inarticulate hunch or intuition – to suggest that *something* of an apparently criminal nature is brewing. 348 S.W. 3d 906, 917 (Tex. Crim. App. 2011)

In the instant case, the highly unusual circumstances for the area and Appellant's behavior provided Officer Brown with enough specific, articulable facts to draw a reasonable inference that the unusual activity was related to crime that had occurred, was occurring, or was about to occur. The information he had was sufficiently detailed and reliable to support more than an inarticulate hunch that something of an apparently criminal nature was brewing. Thus, he had reasonable suspicion to detain the Appellant and investigate unusual circumstances he reasonably believed were related to crime.

Appellant also argues that there was no evidence that she was engaging in any criminal activity prior to the stop. App. Brief at 24. Here, just as in *Thomas*, it was the investigating officer's testimony

that Appellant's car door was open, facing traffic. In fact, that is what first drew Officer Brown's attention to Appellant's car. There is also no dispute that Appellant's car was parked in the 400 block of Twin Creeks Drive, a public roadway. Similarly to *Thomas*, the facts in the present case provided the investigating officer with a reasonable suspicion that section 545.418 of the Texas Transportation Code was being violated and, thus, provided sufficient justification for a *Terry* stop. Like the officer in *Thomas*, Officer Brown's initial investigatory detention expanded to include a DWI investigation once he made contact with Appellant and developed the reasonable suspicion that she was driving while intoxicated. Finally, Appellant concedes that, "There is no doubt that she was driving and little question from the video evidence that she was impaired." App. Brief at 18.

For all the above reasons, Officer Brown had reasonable suspicion to detain Appellant to maintain the status quo and determine whether some offense had been committed. Therefore, the trial court properly denied the motion to suppress. This point is without merit and should be overruled.

**Prayer**

Appellant's trial was without prejudicial error. The State prays that this Court will affirm Appellant's conviction and sentence.

Respectfully submitted,

**Greg Willis**
Criminal District Attorney
Collin County, Texas

**John R. Rolater, Jr.**
Asst. Criminal District Attorney
Chief of the Appellate Division

/s/ Erik F. Gierczyk
**Erik F. Gierczyk**
Asst. Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, TX 75071
State Bar No. 24082333
(972) 548-3657
FAX (214) 491-4860
egierczyk@collincountytx.gov

## Certificate of Service

The State has e-served counsel for Appellant, the Honorable John Schomburger, through the eFileTexas.gov filing system and sent a courtesy copy by e-mail to jschomburger@gmail.com on this, the 3rd day of June 2015.

/s/ Erik F. Gierczyk
Assistant Criminal District Attorney

## Certificate of Compliance

This brief complies with the word limitations in Texas Rule of Appellate Procedure 9.4(i)(2). In reliance on the word count of the computer program used to prepare this brief, the undersigned attorney certifies that this brief contains 2,443 words, exclusive of the sections of the brief exempted by Rule 9.4(i)(1).

/s/ Erik F. Gierczyk
Assistant Criminal District Attorney